Thank you, Your Honors. My name is Rick Holtzheimer. I'm here today on behalf of Columbia Gas Transmission. Your Honors, we are here today on an appeal from an eminent domain matter, and the issues in an eminent domain are very straightforward. The jury is tasked with one issue, which is to determine the just compensation for the property rights that were conducted. And normally in a jury trial, one of the safest things a trial judge can ever do is let the jury decide an issue. But in an eminent domain, the trial judge doesn't have the discretion nor the jurisdiction to do that. We're here today, Your Honor, because that is unfortunately what has happened here. Let me ask you a threshold matter, if I could, Mr. Holtzheimer. The thing that kind of raises a big question for me going through this, is the body of law applicable to the ascertainment of damages related to easements in condemnation cases in federal court? Neither side really pins down where the law comes from. When you look at the law of other circuits, like the First Circuit was looking to the state of Massachusetts in terms of damages. And so as an old condemnation judge in Virginia, it was always clear. You looked to the common law as a basis and to Nichols on eminent domain as to the ascertainment of damages for the permanent taking and the temporary taking. What is the basis, the legal basis or body of law that you're relying on in this case? I understand for the take it's the Natural Gas Act, but as far as the damages, what's the body of law that you're basing your case on? Well, for the damage, I mean, the body of law is the scope of the Natural Gas Act, which says all these other damages, which may be property rights that do need to be valued or something that could result from the take. To the extent that there are any damages or claims, that is outside of the eminent domain case. Okay, what in the Natural Gas Act? Give us a section that says that. The section of the Natural Gas Act says that you're only to determine the just compensation for the rights that are taken. But what body of law develops that for the purposes of this case? Because the federal courts have been kind of beating around the bush in these cases. They have, Your Honor, but I will point out that in U.S. v. 21.54, which is the Fourth Circuit case, what this court said was where the condominor identified what it was taking, which was the high watermark with respect to the dam, the next step is for the trial judge to determine what that meant and what those rights were, issue the opinion, and then the jury is to devalue them. And that is normally what would have happened here. We had two different trial judges, but we started with Judge Hollander. Right, but in determining what damages can be obtained as far as the temporary taking, we have in this case a clear departure, as I understand it, from a common law. Yes. In terms of the damages relating to other parts of the property that are unrelated to the temporary easement that escalated the damages of the temporary taking. And what I'm asking you is what is the source of law behind your argument that this was inappropriate, like to say you can get the hay, to say that the feedlot was damaged. What is your source of law that that is inappropriate for purposes of this case? My source of law, and I start with U.S. v. 21.54, where the court identified what the issues were the jury was valuing and any damages that arose from it. With respect to the hay and the feedlot, all federal courts are in agreement on this, which is when you are determining damage, it's for damages of the easement rights that are taken, not the actual damages that occurred after the date of take. Every single court, you know, if there's one touchstone in this, it is as of the date of take. So when we get into the feedlot, hay, the fences that are being taken, these are all things that occurred after the date of take. You're saying those are bases for separate action. Those are all bases for separate action. So I think when the court wants to say, what do I need to get to? We don't even need to get to that because jurisdictionally, those are all damages that occurred after the date of take for which should never have come in because when we're deciding what the value of the easements are, what is the value of this strip of land, we're determining that on August 4, 2014. These damages that were presented to the jury occurred in 2015 and 2016. And, Your Honor, the landowner said, and we think it's going to continue for another two years. These are all damages that occurred after the date of take. So the touchstone, and if there's a cardinal rule of law, and I'm agreeing is the value is determined on the date of take. And that's where I think one of the ways we went outside of the jurisdiction of the court and outside the court's discretion. Here, Your Honor, the jury was tasked with a lot of factual issues. Again, they get one issue, just compensation. Here, the judge allowed the jury to determine what was the physical area of the take. We've identified- But there isn't any dispute as to the size of the permanent easement. Would the district court allow, as I understood it, the jury to consider whether the temporary easement exceeded the size specified in the complaint? With respect to permanent, you're right. But I think the court's own words- And the duration of that. But the court's own words show what the issue is. You said there's no factual dispute. It shouldn't have been a factual dispute. It shouldn't have been a fact for the jury to decide. With respect to the size of the permanent easements. Correct. There was no factual dispute. But the question just didn't- One of the problems I was having is what I understood to be your contention that the district court or the fact finder is limited to a determination of damages based on what the condemning authority says it's taken. But that's not entirely- That can't define the universe since it is possible that more land could be taken or there could be consequences to more land than described. And the court is absolutely correct. Those are possibilities. But all the cases say to the extent you took more land than what is being described or there are more damages than what's at issue. Those are all separate actions. This court- Excuse me. It was the Fifth Circuit in U.S. v. Brondum where there the condemnation was to clear trees. This was for an airport area and airplanes were landing. They had a condemnation to clear trees. Well, the landowner said, Well, you really are doing landing rights and having nation easement. And they wanted to do that. And the court said, No, that may be true and you can bring a separate action for abdication rights. But the only rights that the condemnor is condemned here is to clear trees. So Judge Duncan, you're- But that seems to me a bit distinguishable because the temporary easement just goes to, as I understand it, the land utilized to effectuate the taking defined in the complaint. And here it was defined. We gave square footage and we showed on a map exactly what the temporary easement was. But the- And you're saying that the district court erred in allowing the jury to decide as a matter of fact whether the condemnor said it was going to use so much land for temporary easement but in fact used more or affected in using, during the temporary easement, enabled consequences that affected the remainder. All of those have to be brought in a separate action- Absolutely, Your Honor. In your authority for that point? Because if this circuit didn't exactly go to the point I'm talking about, as I understand it, recognizing the distinction between the permanent and the temporary easement. And how does a court award damages for the remainder of the land not taken? That has to be a separate proceeding? No, that's all part of it. So in a condemnation action, the only issue before it is what are the rights that are taken, the property rights that are taken. In this case, let's start with the permanent easement, which is a 50-foot strip of land that cuts across their pasture. And that was to install the pipeline within the 50-foot strip of land. In connection with that, there was a temporary, so that is permanent. We have a 50-foot strip easement permanently. In order to effectuate the construction, there was an additional temporary easement that paralleled and touched and was abutting the 50-foot easement only for construction purposes. Correct. And there it was defined and identified, and we identified it in our complaint. Judge Hollander, when she issued her order granting us access, and she said at the argument, she said, well, do I have to take everything you say in your complaint? I said, well, Your Honor, obviously we are bound by the natural gas. The court will determine what rights we do and are able to take. She issued an order specifically saying you have the right to this 50-foot strip and you have a right to this abutting temporary strip, and it was defined, shown on the plats, and she confirmed that and said, here are your rights, and gave us access. That should have been what the jury valued, but the second judge who came in right before trial, Judge Motz, refused to do that. He said, what you thought you were taking, what was taken is what was taken, is what he said, not what the court thought was going to be taken, and therefore created a jury issue as to what we took. And case law after case law says the condemnor has the power to define what rights they are condemning to the extent there are additional rights or additional property that were condemned. That is an inverse condemnation claim or a trespass claim. Now, how is what you just described reversible error here? Because Judge Hollander determined what was … I understand that, but how is what Judge Motz did reversible error? Because the jury was able to determine and find and compensate for land outside of what was taken. We, for example, let me take the … Correct. For example, the Boyce property, there was … Not necessarily outside of what was … That's the problem I'm having. Yes. I'm sorry. No, no, go ahead. For example, on the Turk property and the Boyce property, they had horse farms that had front pastures, and the easement went across the middle of it. They claim that what we have identified and what Judge Hollander ruled was we had taken .68 acres of temporary. Well, the landowners got on the stands of the Turks and said, no, you didn't take .68 acres. You actually took seven full acres. I believe you took my entire front pasture because I wasn't able to use it the way I wanted. And Judge Motz allowed the jury to decide that. To what extent … If I can just follow up very briefly. And what did you do to make sure what you say shouldn't have happened didn't happen? We never went outside of the easement area. We stayed within … See, that's the problem. What did you do in front of Judge Motz to convince him that you didn't go outside what Judge Hollander had given you? All of the evidence by our parties, and I believe the landowners admitted we didn't go outside of the easement. They just said effectually we didn't feel good letting our horses use the front pasture. And I want to address that point. They're saying, well, you've taken down fences, and normally I'd let the horses run free. Columbia offered to put up fences on the easement area so the horses wouldn't come on the easement and so they could still use the front pasture. Columbia also offered to give a little pathway across the easement so they could go through and use the full front pastures. The landowner said, no, we don't want to do any of that. We're going to keep the horses in the back pastures. I'm sorry, Judge Keenan. No, no, that's okay. You know, when I picked up the briefs to read in this case, it seemed to me that there was a giant waving red flag. And the giant waving red flag was the Boyce Award of the temporary easement versus the permanent easement. The Boyce's got what? The Boyce's got. They got $50,000 for the temporary easement, and they got $29,000 for the permanent easement. Yes, Your Honor. And that is extremely atypical. Yes, Your Honor. Okay. So would you, and when you look at what the Boyer's got, the Kenney's got, and I guess the other ones, the Turk's. The Turk's got $23,000 for the permanent easement and $111,000. Exactly. There was a proportionality. Yes. And it was entirely skewed in terms of the Boyce's. Now, tell me why that is or isn't significant to your case. I'm going to be asking both sides about that because that just seemed to be the extreme anomaly that appeared from the face of the record. The extreme anomaly came from, I think, two things. One, Your Honor, you talk about, well, what am I going to write here? You write that the temporary easements were smaller generally or about the same size as the permanent easement, and so we are paying $50,000 for a permanent easement, excuse me, a temporary easement, that we only paid $29,000 for a permanent one. You'd be incentivizing Condom Norris to condemn permanently. Oh, I can see how this is a huge issue for you going forward. Yes. Because you're essentially in the scope of a condemnation action being asked to pay for ancillary damages that are consequences of the actions you took on the property but don't relate to the actual take. That's your case, isn't it? It is, Your Honor, and that occurred after the date of take, and also, Your Honor, for which the Boyce's never received any damage. So the evidence was, and the trial judge said, they're keeping it in their back lot. There's feed costs. There's hay costs. There's fencing costs, all costs that Columbia agreed to pay, and the judge told the jury you are to assume that Columbia is going to pay for all of those costs. So you're saying that's why it ran up that high to $50,000. Yes, but actually, the judge even allowed the Boyce's to say, well, we want $180,000 for the temporary because that's the cost to board the horses, for which Columbia has already paid and is being boarded in their back lot. They still ask for an additional $180,000. So the judge allowed them to get double damages. He said, on the same, Columbia is going to pay for all of this, but at the same time, the jury can consider all of these damages in determining their award. So is the Boyce temporary award the only one that's of concern? No, the Boyce temporary award, the Turks, their permanent easement was $23,000. The temporary easement was $111,000. But this goes to the judge's instruction to the jury, you can consider all of their damages that occurred post-take, and even though Columbia will pay for all of it, you can consider that in awarding them additional damages. But you've settled with the Turks. We did settle with the Turks, but it was settled after the trial. Yeah, so why are we here talking about the Turks? Because it was the same instruction and it was the same thing. They had the same property, having a horse farm. Yeah, but you've settled with the Turks. There's no live controversy. Yeah, we don't care about the Turks. Okay. That's fine. Sorry. We're happy to talk about it. Am I right? We did, Your Honor. Okay, so. You're concerned about conceptually in the other, I mean, I can understand from your explanation now why conceptually it concerns you as manifested, at least with respect to the Boyce. Yes, and the reality is that the temporary take, the construction period is actually only like two, three weeks. The rest of the time, the year, the two years additionally, we're just waiting for the grass to grow. So the actual construction is they come here, they dig in the ditch, they put in the line, they cover it over, and they seed it. But still, we're only talking about the Boyces. No, we're talking about the Boyces, the Boyers, and the Kings, and all this. And they all claimed damages arising from the temporary easement. But the Boyce is the only one that has the anomalous. The Boyces have the most anomalous one, but it's still allowed them. But also, Your Honor, yes, the Boyces are the most egregious. Okay, all right. And also, if you think about it, the temporary take was ancillary to the permanent take. There are no damages arising from the temporary take because it parallels the permanent. So for the Boyces to say, I couldn't let my horses use the front because of the temporary, they couldn't use the – they were already being paid for that in the permanent. So they were getting double damages in that case. Do you want to let him continue? Mr. Holtheimer, you have reached the end of your time on direct. Do you have time for rebuttal? Yeah, I was going to say time for rebuttal. Thank you. Ms. Elephant? Good morning, Your Honors. Carolyn Elephant for the Landowner Appellees. With me is Mr. Hopkins, who is arguing the cross-appeal. Before I begin my more prepared comments, I would like to address Your Honor's questions to my opponent. With regard to the source of law, it was agreed in the jury instructions that federal law would apply. The Middle District of Pennsylvania Court, which we cited in our brief with regard to the Kenney's case, Tennessee gas versus 1.74 acres in Shinola, that has an extensive discussion of what the federal standard is because that Middle District Court applied federal law. The case cites U.S. versus 58.94 acres, which says that under federal law, you value the difference of the property as it was before the take and after the take. The court also specifically mentions that compensation includes any element of value arising out of or in relation to the entire track, which suggests that under federal law, there is a basis for severance damages. I don't think that's something that has been disputed in this case. With regard to the alleged disproportionality of the Boyce temporary easement, when you compare what the Boyce's received for the temporary easement and the Kenney's and Mr. Boyer, it becomes very clear that what they were compensated for was the deprivation of use, the temporary deprivation of their ability to use the property as a horse farm. That's why they were able to recover those temporary damages. So did they get money for the hay? And did they get money for the use of the fact they had to use a different part of their property, the feedlot? No, Your Honor. You're saying that was solely rental value that they got. What in the record supports that contention? Okay. Well, first of all, there was no evidence. There's no evidence in the record of any monetary value attached to hay or to anything like that. Okay. But is there anything in the record? I'm asking you the converse of the proposition. Is there anything in the record that supports your contention that the money that they achieved for the temporary easements was solely related to the rental value? And the reason why I'm asking that is because the judge said, oh, yeah, you can get the hay. And so how do we know that the court, that these damages were, in fact, only for the rental value? Your Honor, I would just like to clarify. If you look at the lower court's instruction closely, he says to the jury, you can take into account things like the fact that they had to get hay or that there was this or that they had to move the horses to another place. He didn't say specifically that they could recover for the value of the hay. So that's an important distinction. And, in fact, there's no testimony on that. In Mr. Boyce's testimony at page 11. Now, what is the value of having to move your horses to another place? What does that have to do? So you're saying that that directly relates to the loss of rental value of the .65 acres? Well, there are a number of ways. The standard for valuing permanent damages is very strict. For temporary damages, it's a little bit more flexible if you look at the- Yeah, what can you get? See, I always thought that a temporary easement was the rental value of the land. And if you're complaining about anything else, you either have a suit for specific performance to restore the temporary easement to its condition, or you have a separate action for damages and trespass or any other theory that you may want to argue. But you don't get, as part of a condemnation award, as part of the rental value, these ancillary damages. Now, you're saying that's not true, that you can get these damages. So what authority do you have for that? For that authority, I would cite the case of Portland Natural Gas, the District of Massachusetts decision, which was also affirmed by the First Circuit. In that case, a piece of property- Okay, but the court was using Massachusetts law there, wasn't it? Your Honor, the court was using Massachusetts law. If you read the decision, the court was using Massachusetts law to value. It cited Massachusetts law for the permanent easement. For the temporary easement, the court actually cited Nichols and another case. In any event- Okay, so the court was using a treatise. What's the source of law? See, this is what's so frustrating about this. Well, Your Honor, so- I haven't heard from you any authority- I haven't seen from you any authority that says that you can get ancillary damages as part of a condemnation case in a federal court. Where is the authority? This First Circuit case doesn't- They cite Nichols. Nichols is a treatise. Well, the First Circuit case is also an authority, and basically this goes back to the date of the take. If you're looking forward, you know, from August 4th forward, and you know that this company is coming to your property, and you're going to have to move your horses. Looking forward, you would have had the opportunity to- you would have been able to argue that these horses were going to be moved and that they had to be boarded somewhere, and that there would need to be damages for that. Because if somebody came to buy your property on August 4th- Right, but that's why you file a separate action, isn't it? Well, Your Honor, again, in Portland Natural- That's not the rental value of the easement, is it? But it's not limited- Your Honor, it's not limited to rental value. The Portland Natural Gas and also the Nichols Treatise talk about how- and also, actually, the Middle District- So it's Massachusetts law you're saying, and a treatise are the sources that we go on in this case? Well, it's because there isn't a lot of case law on that. Also, if you were to look at the Tennessee Gas v. 1.1, the Middle District of Pennsylvania case, which cites many federal cases, the court there says that, basically, under federal law, you want to make the landowners whole. They were deprived of use of the property because the pipeline went through the front. And, in fact, if you look at the rebuttal testimony, you will see that the landowners testify that this whole thing with the fencing and being able to use the property is inaccurate. Right, and you know, Ms. Elfin, I don't mean to cut you off,  and kind of lays waste to it. I understand that concept. And you can totally understand how the landowners- you know, this is a serious grievance and a compensable grievance. The question is, though, is it compensable in the context of the condemnation action or is a separate action required? And maybe you could address why a separate action is not required. Okay, well, first of all, much of the jurisprudence about going beyond the scope of the case, all of it relates to cases where the United States was the taker. And there's important considerations when the U.S. takes property and you try to impose-you try to say that they've taken more than they should have because that could adversely impact taxpayers. There are actually no cases that Columbia cited that say, as a jurisdictional matter, you can't go beyond the scope of the take when a private company is involved. Right, and I'm asking you what your authority is that you can. Again, Your Honor, the authority is somewhat pieced together. We refer to that First Circuit case, which is federal authority. I would also refer you to the Middle District of Pennsylvania case because it discusses federal authority. And that Middle District case, which actually allowed the landowners to recover for the cost of replanting trees in the temporary easement. Basically, the position of that court was federal law and just compensation means that you are compensated fully for the damages that you incurred. And so that is what is happening. That is what the situation is with the Boises. To be compensated for that loss of use of their horse farm for a year and a half, they need to be paid those temporary damages. That's why they're differently situated from the Kennys and from Mr. Boyer. They weren't inconvenienced. They weren't kicked off their property. That's the distinction between the two. And if you look at that Middle District case, which discusses federal law. Could you refer to that case by name? Yes, I'm sorry. It's the Tennessee Gas versus 1.78 Acres in Shinola County, Pennsylvania. And it discusses, it makes very clear that it relies on federal law. It discusses Supreme Court cases for the proposition that a landowner is entitled to be compensated in full. And if the Boises were not compensated for the lost use of their horse farm, they would actually be worse off than the Boyers and the Kennys who didn't suffer that same loss of use of their property. And, again, in the Middle District case, the court didn't draw a distinction between where that compensation needs to happen. The cases that talk about separate actions are situations where there's a physical invasion. So if Columbia had said that they were going to take 0.5 acres and then they went and dumped sewage on the rest of the property and the horses couldn't go there, that's a physical invasion. In cases like U.S. versus Winnebago and U.S. versus 101.8 Acres, they make very clear that if there's a direct physical invasion, that is essentially a second taking that is outside the scope of jurisdiction. But in tying your response back into Columbia's assertion, it does go to the question of when you define the take. When is what defines the parameters of the property taken and whether or not the district court erred in essentially saying that the jury would get to decide what amount of land was actually affected by the temporary easement after the take, as I understood it. Well, and the court did not tell the jury you can say how much land was taken. Well, I thought it actually said you could determine what land was actually taken. But he then went on to explain. He also amplified the concept. He explained that he was talking about, he talked about, you can talk about what type of uses were lost on a temporary basis. He specifically says something, you can consider whether they lost use of the horse barn temporarily. And I read that to me in addition. I didn't read that to be a limitation. He actually did use, as I noted for myself, how the jury could determine land actually taken. But in any event, Your Honor, there's no indication that that's true. I mean, that's my question. If that's true, why is that not problematic? If it's true, it's not my impression that that was how the jury read the instruction. That was what you have to, the court needs to look at the instructions as a whole. And that's one specific point that he had said, along with saying take into account what the temporary impact is of the lost fences or the hay. He was using those to give an example of the types of damages that were temporary versus permanent, the long-term uses. So that was the way that I had read the judge's instruction in that particular situation. It's also not problematic, again. I mean, courts always look at damages outside the easement. That's essentially what severance damages are. You have damages within the easement and then those that flow from it. And there's all of the courts, even U.S. versus Winnebago, the ones that say that where there's physical invasion you can't recover, those courts say very willingly if it flows directly from the taking, you can recover for that. And that's what happened to the Boises. It flowed. The fact that they couldn't put their horses there flowed from Columbia's taking, or Columbia's use of that temporary easement. Nobody alleged that Columbia went outside the property. There's no dispute over that. Thank you. Thank you. And if I could just also mention to the court, we had argued in our brief that should the court be inclined to reverse any one particular portion of the verdict, the rest of the verdict can stand. It was a special verdict and it's fairly easy to limit, to separate out which pieces of it relate to which claim. Okay. Thank you. Mr. Hopkins? And you are here on the cross appeal. Yes, Your Honor, that's correct. Good morning. May it please the court, Jeremy Hopkins on behalf of the landowners. The question on the cross appeal is whether courts can use their inherent powers to grant legislative powers of eminent domain that Congress has chosen to withhold. And we're here on this issue precisely because Congress has not granted private gas companies the power to exercise this quick take authority. If Congress had given it to gas companies, there would be no reason for private gas companies like Columbia to have to come to courts and ask the courts to authorize them to exercise this extraordinary power of eminent domain. And what's at the heart of this issue is the nature of an eminent domain case. This court has recognized in Crawford v. Courtney, 451 F. 2nd at 492. Is your argument you're asking us to reverse a pretrial grant of immediate possession? Yes, Your Honor, that's correct. And that is not moved by? That would be capable of repetition while evading review. How so? Isn't this project complete? That's precisely why it would be capable of repetition while evading review, Your Honor. In the same action? Because isn't that usually the point? Not that it's likely to come up and affect you again. How is it capable of repetition with respect to you? As the prior counsel have argued, there are still issues such as temporary construction easement, the grass is still growing. There are still things Columbia has to do. What do those have to do with the grant of immediate possession? Because Columbia could come back again and ask the court, again, to allow it to take immediate possession if it needs to do anything on that property. If Columbia needs to come back and do any work. Inside the easement that's been granted? I thought that the grant of immediate possession was to move in and take care of the work associated with the permanent easement right away. How is that capable of recurring? Because, Your Honor, what would happen is if Columbia needs to come back out and do additional work, the temporary easement has expired. Yes. And the nature of these pipelines is Columbia is going to come back out and do additional work. They took the right to lay, remove, repair additional lines. In conjunction with the permanent easement? Not sufficient to allow it to do the work. That's why it took only a temporary easement for the work. The pipeline itself is in a permanent easement. Adjacent to it were temporary easements. So if Columbia needs to come back out and do additional work, it will need to take another temporary. I'm sorry. Yes, Your Honor. This is probably just my ignorance of pipeline maintenance. I'm not getting it either. Thank you. Why would you need to go beyond that? I'm not factually understanding. It's unpleading, and in an eminent domain case, the condemning authority can only take what's necessary to achieve its public use. Maintenance of the pipeline is part of the public use. They needed the temporary construction easement as part of that maintenance. Construction and maintenance. It happens. Well, not just construction, but the temporary easement. They're still going to have to come back out and repair parts of this property. They didn't need a temporary easement to maintain something that wasn't yet in the ground. But they took the right to repair, replace, remove. So when they come back to exercise any of those rights, they're going to need that additional land. And also, the reason this is not moot is in these – You don't think they're going to be able to pick up the phone and call your client, or you better yet, and say, listen, during the week of March, whatever, through April, whatever, we need to come out and do some things. We'll send them a bill, and they'll pay it, and everybody will go home happy. You don't think that's the way it's going to go? No, sir. I can tell you from experience that's not the way it goes. That's precisely why we were in court. The parties couldn't work out the compensation. What was the compensation for all the rights? And this is also capable of repetition while evading review because when this injunction issues, the next day, Columbia can take down fences, they can take down barns, they can take down homes, and the owner is never going to get their day in court. This is a very harsh proceeding. And this court has said that these eminent domain cases are cases of a special nature that intimately involve sovereign prerogative and that under our separation of powers, Congress and Congress alone has the power of eminent domain. The courts have said from time immemorial. I think you're asking for an advisory opinion. I really do. I appreciate the difficulty of getting in the court, but surely some judge somewhere will be willing to entertain this issue and tee it up for appellate review, but I'm not sure you can get it reviewed at the appellate level after trial on the taking claim. I think that's precisely why we have the doctrine of capable repetition while evading review. Has that ever been applied in the context of condemnation? I don't know that it's... Yeah, that was also in the context of pre-trial grant of immediate possession. To my knowledge, that issue has never been raised. Could you have appealed it? We could have appealed that. Yes, Your Honor, we could have appealed that under the injunction. The trial counsel could have appealed that, but under Rule 4 of the Rules of Appellate Procedure, trial counsel, the owners face overwhelming resources, and rather than do piecemeal litigation, trial counsel was permitted under Rule 4 of the Rules of Appellate Procedure to wait until the end of trial, and if the opposing counsel noticed an appeal, the owners had a right rather than piecemeal at that point to notice this for a cross appeal under Rule 4, and that's precisely what happened here, and that's consistent with the rules to avoid the piecemeal litigation. It's also consistent with the overwhelming resources that these owners face, and again, to get to the heart of the issue, Congress determines whether an eminent domain, whether a condom nor can exercise the quick take power, not courts, and unless if we're going to rely... They're saying this wasn't a quick take. Quick take is when the title passes. The title did not pass. It was access. Isn't that correct? Yes, Your Honor, that's correct. But what I would say, and Congress has said, is the importance is possession. If you look at 40 U.S.C. Section 3118, Congress says that the right to seize possession of property is an additional right, and it's the old story. If it looks like a duck, it walks like a duck, and it quacks like a duck, it's a duck. I mean, at the end of the day, the court gave the gas company possession of the Boyce's property. The gas company could immediately knock down barns, knock down fences, and without the doctrine of capable repetition while evading review, every single owner in that scenario is at the benevolence of the trial court judge who issued the injunction. And there's no way owners... Or the appeal. Well, even under the appeal, Your Honor, it's too late. That's why these owners desperately need relief. Well, they've got to stay. When they note their appeal, they've got to stay. Not as a matter of right under the rules, Your Honor. They can ask for it. Yes, Your Honor, that's correct. But again, they're at the benevolence of the trial court judge who we submit is exercising power that Congress has withheld. We think it's extremely improper for the courts to use their inherent power to grant powers of eminent domain that Congress has withheld, and silence can't be interpreted as congressional authorization. The gas company, having only the ordinary power of eminent domain, has no right to cease possession until there's been a determination of just compensation and payment of compensation. This court has recognized that principle in Johnson v. Collins Entertainment Company, 199 F3rd 710. In citing Grupo Mexicano, a case out of the United States Supreme Court, this court vacated injunctive relief, albeit not in an eminent domain context, but in another context, because it said the courts cannot use their inherent powers  under principles of federalism. The principle of separation of powers likewise prohibits courts from granting private gas companies this extraordinary power of eminent domain that Congress has withheld. And without review by this court, these owners simply have no chance. I thought we had already said that they had that power. Am I incorrect? The Sage case, Your Honor, never mentions the word separation of powers. It doesn't. No, no, I wasn't talking about separation. Haven't we authorized pretrial grants of immediate possession before? The Sage case upheld that grant before. Right, that was what I was referring to. Your Honor, what we're asking the court is to address this through the lens of separation of powers, which no court has done. Do we have to overrule Sage to do that? Your Honor, I think the ultimate result would be overruling Sage, but I don't think it has to be overruled directly, and this is why. This panel can't overrule Sage. Your Honor, we're not asking a direct overrule of Sage, and this is precisely why. Sage does not mention the word separation of powers. It mentions the Constitution. But you want us to get to a result different from that reached in Sage by relying on a concept that could have been equally applicable and could have been relied on by the court in Sage, but wasn't? It was not, Your Honor. And you want us to do it through implication of constitutional principles in violation of the Avoidance Act. That's an awful lot easier. Your Honor, I would say that actually to allow the courts to do what was done in this case is a direct constitutional violation. You didn't ask. You didn't. If you're coming to us after a trial that affected the very possession at issue asking us to attempt to circumvent precedent. Your Honor, I'm not asking to circumvent precedent again in Sage. It says the Constitution does not prohibit this. If you, in one sentence, and it only mentions the Constitution once. That really is all it has to do. Textually, the Constitution, there is no express prohibition. But if you look at it through the lens of separation of powers, which the court has not done, that in accordance with the principles this court recognized in Johnson v. Collins, a district court cannot use inherent equitable power to grant private gas companies the extraordinary quick-take power that the Congress has not given it. In the words of Judge Wilkinson from Johnson v. Collins. So you're asking us to find that grants of immediate possession, not quick-take, but grants of immediate possession are unconstitutional. Yes, Your Honor, because when Congress grants only the ordinary power of eminent domain, as the United States Supreme Court said in Kirby Force... I do understand. I just wanted to make sure I understood what you were requesting. And that is the fatal flaw at the end of the day, is that when Congress gives only the ordinary power of eminent domain, the judiciary can't determine that a gas company will exercise the power of eminent domain in a way contrary to that. Thank you. Thank you, Your Honor. Mr. Holtzheimer, you are next up, I believe. Your Honors, as a natural gas company subject to the Natural Gas Act and subject to the Federal Energy Regulatory Commission, the Court has asked, what defines easement? What defines easement? FERC defines easement. FERC issues a certificate to Columbia Gas identifying specifically the property and rights that Columbia may condemn. That issue is decided at FERC and is unassailable at the district court level. Landowners and the court have no authority to assail what FERC has issued saying this is the property and these are the rights. For the trial judge to authorize the jury and empower the jury to go beyond what was identified in the FERC certificate is absolutely outside the jurisdiction of the court and it's outside the court's discretion. Does the FERC speak to the location of the temporary easement as well? It does, Your Honor. It identifies all those property areas. And Your Honor, with respect to that, I think that is directly on point and directly is conclusive of that issue. This is not something the jury should have been messing with. They should have just been valuing what FERC had identified and instead they were deciding that and that is something that was already decided. Another big issue here would be with respect to the damage to the remainder and the testimony that we believe that should have been struck and undaubered by expert Hannah, the landowners. Ultimately, she said, I believe the presence of a pipeline on a large acre farm like these diminishes the remainder value by 25%. And Your Honor, there is no basis underdog it for that. Let's look at the basis for her opinion. First of all, there was only, she cloaked it under a person and said, well, I looked at paired sale. She found one paired sale. Two houses, one with a pipeline, one without a pipeline. And there she said that was 25%, so therefore, I'm going to apply it to all of these properties. That is absolutely inappropriate underdog her. And looking at what she found, she found a house with a 75-foot easement, two pipelines, and found that it affected that house 25%. Therefore, she said it applied to all of these properties. And in doing that, she excluded two other paired sales that she had found that found 15%. And she said, nope, I'm focusing on pair C, 25%. This is inappropriate as an appraisal and never should have gotten to the jury. So she found something with two pipelines, 75-foot easement. The houses were, one was a foreclosure sale and the other house was an estate sale. This really sounds like a weight argument rather than a visibility argument. It's not when you have one pair. They're all flawed. It has nothing to do with this pipeline. It has two pipelines and it's completely different. That's her only basis for the testimony. And what makes it a dogmatic motion is she has no authority that supports her. None. She could find no authority and she says, I don't believe there's any authority. And she disregarded all the authority against her. Our experts cited countless studies, and I specifically identified four, that found that the presence of a pipeline is minimal damage to the remainder of the property. And she just discounted them by just saying, I didn't look at them and I don't believe them. I'm focusing on a paired sale. I believe that that was it. So without her differentiating, and some of these studies, one of the studies had 10,000 paired sales examined. And what the experts say is, you want to look into a neighborhood where all the houses are basically the same and you look at multiple, multiple sales because every sale is going to be different and there may be different motivations. And she just ignored all of them without any analysis whatsoever. That's why it's a Daubert motion. It's not a weight issue. She just basically created her 25%, ignored two-thirds of her own evidence, focused on that, and it wasn't even relevant here because it was two pipelines on a larger easement. So I'm curious, if you were to prevail on this argument, what would be the result? What would be the result is that this is only for damages to the remainder. The jury would determine, what is the presence on a large... No, no. My question is, if you were to prevail on this argument, what would be the result of this appeal? Oh, that it should be returned back to the trial for an initial trial on damage to the remainder. For a further trial? Yes. Well, normally when, in a civil case, when a district court erroneously tramples on Daubert and admits evidence that is necessary to sustain the claim, that's the end of the case, right? Well, it should be because our... So you're changing your answer? I apologize. I would change the answer. So they get nothing? And that's what the evidence showed. So that's your position? That is our position. So... Well, there has to be an effect on the remainder, though. That's the problem. The jury... So what do we do with it? And you'd have these people left without any recourse? It never should... Because testimony was inadmissible? The testimony... And it was highly prejudicial when all of the... Why don't we send it back for a new trial? If that's the case. It seems to me a pretty outrageous position on your part to say that... We believe ultimately if you send it back... You could send it back for a new trial, and I don't mean to flip-flop again, but you could send it back for a new trial, but ultimately... Flip-flop as many times as you want. But all the cases say when you have large pastoral land, and it's a strip of land, it's underground, the horses are running across it, it's the same pasture it was before, minimal damage... So would they get to go out and hire a new expert? Does it all go back to square one, and you have a complete do-over on the remainder? It should go back over, and she can still testify. She just... All of that evidence... She can still testify? With respect to other issues, but with respect to the damage to the remainder, her testimony should have been stricken. There's no basis for it. Perhaps you would be happier with a do-over, and you can correct the jury instructions that you are apparently uncomfortable with. And that's part of it. I mean, with the damage to the remainder, the judge instructed... In answering Judge Duncan's question, could you say whether the permanent easement evaluations are subject to a do-over as well? The permanent easement... We don't seem to be really objecting. I just want to make sure. Not on the permanent easement. I think that that was... So Judge Duncan's saying, well, if the remainder's got to go back, maybe the temporary easement should go back. They both do have to go back because the judge instructed... Do you agree on that? I do. Because the judge instructed the jury that in looking at the damages to the remainder, they could consider all of this, again, post-take damages that occurred, the fencing, the dog fencing, the horses being evacuated, they could consider that in the damage to the remainder. We already have to do a new trial on the damage to the remainder because of all of these damages that occurred after the take, and they're outside the scope of this court's jurisdiction. So we already have to do that. You are out of time. Do you want to say one sentence about the cross-appeal? This is your last time before us. On the cross-appeal with respect to Sage, I think we're on the side of angels. We think there was a well-reasoned opinion by a very smart judiciary. And you don't think it was moot? And we absolutely believe it was moot. I think that covers it. Thank you. Thank you. Mr. Hopkins? Your Honor, with all due respect, it was my impression that rebuttal was supposed to rebut arguments that we had raised in our main argument. Okay, but as I have it, Mr. Hopkins was allowed rebuttal. The appeal, the appellee then cross-appealed. Yes. So he would have an opportunity only as to the cross-appeal, but you aren't obligated to take it. The only reason, and I understand the procedure, Your Honor. However, under the procedure, I had also thought that rebuttal was supposed to be limited to the arguments that were addressed in the main argument. Perhaps I'm incorrect about that. Because if Mr. Mosheimer had addressed the Delbert issues in his main argument, I would have responded to them. No, you are responsible for the issues as appellee. Yes. Okay. You don't get. Yes. Mr. Hopkins? Just very briefly, Your Honors. Again, to quote this court in Johnson v. Collins Entertainment, I believe it was Judge Wilkinson's opinion, his concurrence denying the court's review of that decision in Bonk. He said there would be no logical stopping point to the inherent equitable powers of the courts if they could use those powers to infringe on, in what was that case, the state's regulatory powers. That same principle applies here. There's no logical stopping point if district courts can simply give private gas companies powers of eminent domain that Congress has withheld. Without review from this court, there's simply no way any owner can ever get review before their property is given to another, before that party has a right to destroy their property, and before it's gone. And review is critical for these owners, because without it they're left to the benevolence of the very judge that has given these private gas companies the immense powers of eminent domain that Congress chose to withhold. So I would urge this court to please look at Sage through the separation of powers doctrine, through the principles that this court espoused in Johnson v. Collins Entertainment Company. You might also consider if you do not get the result you want, trying to take the case en banc and asking the court to reconsider en banc the panel opinion in Sage. Yes, Your Honor. Thank you, Your Honors. I appreciate your time. We will come down and greet counsel and take a brief recess.
judges: Allyson K. Duncan, Barbara Milano Keenan, Andre M. Davis